# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

CAITLIN HUNTER,       )
      )
      Plaintiff,       )
      )       Case No. 4:24-CV-00772-DGK
      v.       )
      )
KC COACH HOUSE, LLC, and       )
LANDMARK REALTY of MISSOURI, LLC,   )
      )
      Defendants.       )

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from a slip-and-fall accident at the Coach House Apartments in Kansas City, Missouri. Plaintiff Caitlin Hunter, a resident, was attacked by wasps while getting her mail, and tripped and fell on a damaged patch of concrete while fleeing from them. She is suing the owner of the complex, Coach House, LLC ("Coach House"), and the entity that manages the complex, Landmark Realty of Missouri, LLC ("Landmark"), for negligence claims and a violation of the Missouri Merchandising Practices Act ("MMPA").

Now before the Court is Defendants' motion for summary judgment. ECF No. 30. Because Plaintiff's lease contains an exculpatory provision which bars Plaintiff from suing for negligence, and because she cannot satisfy the elements of an MMPA claim, the motion is GRANTED.

### Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under

the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must substantiate her allegations with "sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

### Undisputed Material Facts

The undisputed material facts are as follows. The Court has limited the facts to those that are undisputed and material to the pending summary judgment motion. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has excluded legal conclusions, argument presented as fact, and proposed facts not properly presented[1] or properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

### Background

Coach House Apartments is an apartment complex in Kansas City, Missouri, that is owned by Coach House, which acquired the property on June 30, 2022. Coach House Apartments is a

---

[1] Plaintiff's Statement of Additional Uncontroverted Facts contains fifteen proposed facts, but Plaintiff sprinkles additional factual allegations (strangely, often with citation to the record, which begs the question why some of these facts were not included in the statement of facts) throughout the Argument section of her brief. This ignores Local Rule 56.1(b)(2)'s requirement that, "If the opposing party relies on any facts not contained in the movant's suggestions, the party must add a concise listing of material facts. Each fact in dispute must be set forth in a separately numbered paragraph and properly supported in accordance with Fed. R. Civ. P. 56(c)." The Court has excluded factual allegations not properly included in Plaintiff's Statement of Additional Uncontroverted Facts.

large residential apartment complex with more than 800 units that occupy dozens of buildings covering more than forty-five acres of property.

Coach House does not have any employees, and for the entire time it has owned the Coach House Apartments, it has delegated the management of all aspects of that apartment complex to Landmark under a written management agreement.

Plaintiff Caitlin Hunter was a tenant at the Coach House Apartments under the prior owner before KC Coach House bought the property in June 2020. She moved into the property in August 2018 under a lease for a twelve-month term for unit #202 located at 11205 Oak Street, Kansas City, Missouri, 64114. Ms. Hunter's tenancy in this same unit was extended for a subsequent twelve-month term in August 2019 under the prior owner and then was extended again for another twelve-month term in August 2020, shortly after KC Coach House acquired the Coach House Apartments and Landmark began managing the property.

When Plaintiff extended her lease in August 2020, she signed Landmark's standard form Missouri lease. Faced with the choice of either signing the lease and staying or not signing the lease and vacating the property, she chose to sign the lease and stay.

The lease was for a twelve-month term that began on September 1, 2020, and ended on August 31, 2021. This was the operative lease in effect at the time of the accident, which occurred on August 21, 2021.

The lease includes an exculpatory provision that states as follows:

> **34. <u>EXCULPATION, RESIDENT'S RELEASE AND AGREEMENT TO INDEMNIFY.</u>** OWNER AND/OR LANDMARK REALTY OF MISSOURI, LLC AND/OR LANDMARK REALTY, LLC (HEREINAFTER COLLECTIVELY "LANDMARK") SHALL NOT BE LIABLE FOR ANY DAMAGES OR INJURY, INCLUDING PERSONAL INJURY AND/OR PROPERTY DAMAGE, TO RESIDENT, OR ANY OTHER PERSON, INCLUDING, BUT NOT LIMITED TO, RESIDENT'S GUESTS, LICENSEES, OR INVITEES, OCURRING ON OR ABOUT THE PREMISES OR ANY PART THEREOF OR IN COMMON AREAS THEREOF, REGARDLESS OF THE CAUSE OF SUCH INJURY, LOSS OR DAMAGE, INCLUDING BUT NOT LIMITED TO INTERRUPTION OF

**UTILITIES OR OTHER CASUALTY OR OCCURRENCES. RESIDENT, FOR HIMSELF, HIS HEIRS, EXECUTORS, ADMINISTRATORS, APPROVED SUCCESSORS AND ASSIGNS, HEREBY RELEASES, RELINQUISHES AND DISCHARGES AND AGREES TO INDEMNIFY, PROTECT AND SAVE HARMLESS OWNER, LANDMARK, THEIR AGENTS, SUCCESSORS, AND ASSIGNS OF AND FROM ANY AND ALL CLAIMS, DEMANDS AND LIABILITY FOR ANY INJURY TO, INCLUDING DEATH OF, PERSONS (WHETHER THEY BE THIRD PERSONS, RESIDENTS, OR EMPLOYEES OF THE PARTIES HERETO) AND ANY LOSS OF OR DAMAGE TO PROPERTY (WHETHER THE SAME BE THAT OF EITHER OF THE PARTIES HERETO OR OF THIRD PERSONS) CAUSED BY, GROWING OUT OF, OR HAPPENING IN CONNECTION WITH, RESIDENT'S USE AND OCCUPANCY OF THE PREMISES, FIXTURES, EQUIPMENT, APPLIANCES, FACILITIES, IMPROVEMENTS OR COMMON AREAS LOCATED OR TO BE LOCATED THEREON, OR BY REASON OF ANY LIKE OR DIFFERENT CASUALTY. IN LIKE MANNER AND TO THE EXTENT SET FORTH IN THE PRECEDING SENTENCE, RESIDENT AGREES TO EXONERATE AND SAVE HARMLESS OWNER, LANDMARK, THEIR EMPLOYEES, AND AGENTS FROM ANY AND ALL LIABILITY EVEN THOUGH THE CLAIM, OR LOSS OR CASUALTY IS ATTRIBUTABLE TO THE <u>*NEGLIGENCE*</u> OF OWNER, LANDMARK, OR ITS EMPLOYEES OR AGENTS. RESIDENT AGREES TO BE RESPONSIBLE FOR OBTAINING AND MAINTAINING INSURANCE ON PERSONAL PROPERTY CONTENTS AND LIABILITY. BY SIGNING BELOW, RESIDENT ACKNOWLEDGES THAT HE/SHE HAS READ AND UNDERSTANDS THE FOREGOING EXCULPATIONS, RELEASE, AND AGREEMENT TO INDEMNIFY.**

Lease § 34, ECF No. 32-2. The exculpatory provision is set out on its own page in the middle of the lease with a large blank space on the preceding page. It is written in larger font than the rest of the lease, with bold, all-caps type that distinguishes this provision from the rest of the text in the lease. Unlike other sections of the lease, the title of this section ("Exculpation, Resident's Release and Agreement to Indemnify") is underlined to draw extra attention to its significance. The term "negligence" is emphasized in the body of the provision with underlining and italicization.

Plaintiff signed and dated the lease on this page immediately below the exculpatory provision.

As part of her lease, Plaintiff paid a monthly fee for pest control services and a fee for utilities in common areas, including electrical utilities.

When KC Coach House acquired the Coach House Apartments, the complex required

substantial work to address deferred maintenance across the property, including emergency issues needing immediate attention, high- and medium-priority issues that were scheduled for completion as soon as possible after the emergency work, and other work that would be completed as project schedules, weather, and worker availability permitted. In mid-2021, Landmark began an effort to address concrete repairs across the property, starting with sewer drain and carport repairs, followed by specific concrete repairs as needed at various buildings across the property. A portion of this concrete work began on August 12, 2021, and continued through the end of that month.[2]

During Plaintiff's tenancy, Landmark responded to the following requests for maintenance Plaintiff made, including (1) an air conditioner repair that was reported on July 15, 2020, and fixed the same day with replacement of the control board; (2) an attic leak that was fixed within three days of being reported on September 11, 2020; (3) a washer leak that was cleaned up the same day it was reported on November 9, 2020; and (4) an air conditioner repair that was completed within two days of being reported on August 5, 2021.

Landmark has no record of Plaintiff or any other tenant reporting a wasp nest at the mailbox hub or reporting any concern about the lighting in the area.

Plaintiff states she called the Coach House Apartments office number twice before the

---

[2] Defendants' proposed statement of fact numbers 20–24, 25–28 related to the condition of the concrete sidewalk and area around the mailboxes are all based on the opinions of Defendants' proposed property management expert, Robert Griswold. These proposed facts are excluded for the following reasons. Proposed fact numbers 20–21, 23, 27 are excluded because the proposed facts—such as Mr. Griswold's opinion that concrete in exterior areas is subject to natural "wear and tear" from exposure to elements and that it is common for wasps to build nests in various areas of apartment completes—are something within the understanding of lay people and so expert testimony is unnecessary. Alternately, to the degree these proposed facts offer opinions about the state of the concrete—something requiring expert testimony—Mr. Griswold does not have the requisite training to deliver such opinions. He is not an engineer, concrete mason, or concrete finisher, nor is he an entomologist. The other proposed facts, numbers 22, 24, 25–26, 28 are excluded because they offer legal opinions as to the ultimate issue, for example, whether Defendants actions were "reasonable" or whether a condition was "open and obvious."

5

accident—on or about August 12, 2021, and August 17, 2021—to report the presence of a wasp nest on the community mailbox in the mailbox hub.[3]

On August 21, 2021, wasps allegedly attacked Plaintiff as she was attempting to retrieve her mail from an exterior mailbox hub. As she ran from the wasps, she tripped and fell, injuring her ankle. Plaintiff alleges she fell as she was running from the wasps because of the "generally dilapidated condition" of the sidewalk concrete surface.[4]

The concrete around the mail hub at issue had some crumbling concrete, missing concrete, and an uneven surface. The mail hub was also poorly lit.

On September 19, 2023, Plaintiff sued Defendants in the Circuit Court of Jackson County, Missouri,[5] alleging premises liability and ordinary negligence. On October 23, 2023, Defendants removed the case to this court. Defendants filed a motion for judgment on the pleadings, arguing that these claims were barred by the exculpatory provision in Plaintiff's lease. This Court granted the motion and dismissed the case without prejudice, finding the exculpatory lease provision barred Plaintiff's claims. Order Granting J. on the Pleadings, *Hunter v. KC Coach House*, No. 23-cv-00759-DGK (W.D. Mo. filed May 31, 2024), ECF No. 19.

On September 25, 2024, Plaintiff re-filed in the Circuit Court of Jackson County,[6] this time bringing five claims: premises liability (Count I), negligence (Count II), negligence per se (Count III), violation of the MMPA (Count IV), and gross negligence (Count V). Defendants

---

[3] Plaintiff does not have admissible phone records that support this claim. She has submitted what she contends are her cell phone records, but they are not properly authenticated.

[4] The Court notes that none of these facts are included in either party's statement of facts. While this is arguably fatal to Plaintiff's claims, the Court has nonetheless included this paragraph since both parties appear to agree that these are the allegations.

[5] Case number 2316-CV24597.

[6] Case number 2416-CV27585.

again removed to this Court and, after the close of discovery, filed the pending motion for summary judgment.

## Discussion

The Court holds Defendants have demonstrated they are entitled to summary judgment on all of Plaintiff's claims.

### I. Counts I, II, and III are barred by the exculpatory provision in Plaintiff's lease.

Defendants allege Counts I, II, and III fail as a matter of law because they are all negligence claims which are barred by the exculpatory provision in Plaintiff's lease. Plaintiff does not dispute that Counts I–III are negligence claims, thus conceding this point. Instead, she contends the exculpatory provision is unenforceable with respect to Counts I and II because the exculpatory provision is vague, ambiguous, and unconscionable, and Count III is not barred because a negligence per se claim may not be waived by contract.

#### A. The exculpatory provision is not vague, ambiguous, or unconscionable.

Under Missouri law, exculpatory provisions are enforceable so long as they are "clear, unambiguous, unmistakable, and [use] conspicuous language." *Alack v. Vic Tanny Int'l of Missouri, Inc.*, 923 S.W.2d 330, 337 (Mo. 1996). "The exculpatory language must effectively notify a party that he or she is releasing the other party from claims arising from the other party's own negligence." *Id.* That is, "[t]he words 'negligence' or 'fault' or their equivalents must be used conspicuously so that a clear and unmistakable waiver and shifting of risk occurs." *Id.* A party cannot "exonerate oneself from future liability for intentional torts or for gross negligence." *Id.*

Plaintiff's argument that the exculpatory provision here is vague, ambiguous, and unconscionable is unavailing. First, as a threshold matter, the provision is prominent and explicit.

It is set out on its own page in the middle of the lease with a large blank space on the preceding page. It is written in larger font than the rest of the lease, with bold, all-caps type that distinguishes this provision from the rest of the text in the lease. Unlike other sections of the lease, the title of this section ("Exculpation, Resident's Release and Agreement to Indemnify") is underlined to draw extra attention to its significance. The term "negligence" is emphasized in the body of the provision with underlining and italicization. And the provision is located directly above a signature line. Thus, the provision is sufficiently conspicuous. *See Abbott v. Epic Landscape Prods., L.C.*, 361 S.W.3d 13, 18 (Mo. Ct. App. 2011) (enforcing an exculpatory provision where "[t]he language releasing the landlord from his own negligence contains the term 'negligence,' is explicit in its wording, and is written in capitalized letters in a paragraph displayed more prominently than any other part of the lease"); *Fouts v. Regency N. Acquisition, LLC*, 569 S.W.3d 463, 468 (Mo. Ct. App. 2018) (same).

Second, the provision is not vague or ambiguous. An exculpatory provision is ambiguous "when there is duplicity, indistinctness, or uncertainty in the meaning of the words used." *Alack*, 923 S.W.2d at 337 (citation omitted). An exculpatory provision "that purports to relieve a party from any and all claims but does not actually do so is duplicitous, indistinct and uncertain." *Id.* This occurs when an exculpatory provision uses only general language that could be read to include claims for intentional torts or gross negligence which cannot be released. *See id.*; *see also Lewis v. Snow Creek, Inc.*, 6 S.W.3d 388, 394 (Mo. Ct. App. 1999) (finding the phrase "or other legal theory" ambiguous because it included "intentional torts, gross negligence or any other cause of action not expressly listed"). Plaintiff intimates that the exculpatory provision is ambiguous because it did not notify her of the specific claims she was releasing, and because it purported to waive claims that cannot be waived. She also contends it is ambiguous because Defendants'

corporate representative (the same person for both entities) allegedly could not testify satisfactorily about what terms in the provision meant, and Plaintiff allegedly did not understand what the provision meant either.

These arguments are without merit. To begin, as the Court observed in dismissing the previous case, the exculpatory provision in Plaintiff's lease "is nearly identical to the exculpatory provision upheld by the Missouri Court of Appeals in *Abbott*." Order Granting J. on the Pleadings at 5. Indeed, the lease provision is *identical* to exculpatory lease provisions other federal courts have found to be enforceable under Missouri law. *See, e.g.*, *Kidd v. Canyon Creek Apts., LLC*, No. 4:24-CV-00453-FJG, 2025 WL 3736444, at *2 (W.D. Mo. Sept. 17, 2025); *Holmes v. KC Waldo Heights, LLC*, No. 25-CV-00380-SRB (W.D. Mo. Sept. 3, 2025) (granting judgment on the pleadings). Plaintiff's attempt to find meaningful difference between the language in exculpatory provisions enforced by courts in other cases and the provision at issue here is futile. Contrary to what Plaintiff argues, the provision here *does* state what claims Plaintiff is waiving—namely, claims "attributable to the negligence of [Defendants]"—and nothing more. While the provision waives all negligence claims, it does not, as Plaintiff suggests, purport to waive claims which cannot be waived under Missouri law, such as claims for intentional torts. Thus, it comports with *Lewis*, 6 S.W.3d at 394, which held an exculpatory provision's inclusion of the phrase "or other legal theory" was ambiguous because it included intentional torts, gross negligence, and other causes of action not expressly listed. Further, as the Court previously observed, the general exculpatory language in the exculpatory provision is acceptable because it does not relieve Defendants of claims they cannot release either. *See* Order Granting J. on the Pleadings at 4–5.

Plaintiff's related argument—that the provision is vague and ambiguous because neither she nor the corporate representative allegedly understood it—fails because there is no basis in the

record for this assertion.  Plaintiff did not offer such proposed facts in her statement of additional uncontroverted facts, so the Court cannot consider them.[7]

Third and finally, Plaintiff's suggestion that the provision is unconscionable is also unavailing.  Plaintiff argues it is unconscionable because when she signed the lease: she was a low-income nursing student; the Covid-19 pandemic was in full swing; she could not afford to move and so had no bargaining power; she did not know what the exculpatory provision meant and did not consult an attorney; and the lease is effectively an adhesion contract.  Even if the Court could consider these allegations,[8] this is a court of law, not a court of equity.  Plaintiff's brief fails to cite the legal standard for unconscionability, much less apply it to the undisputed material facts here, nor does her brief cite any caselaw finding an exculpatory lease provision unconscionable.  And in fact, a Missouri appellate court has rejected a similar argument.  *See Fouts*, 569 S.W.3d at 467 (rejecting an argument in a slip-and-fall case that a similar exculpatory provision was an unenforceable contract of adhesion or void as against public policy, observing that "[e]xculpatory clauses are not uncommon in lease agreements.").

Accordingly, the Court holds the exculpatory provision at issue here is not vague, ambiguous, or unconscionable.

### B.     The exculpatory provision also bars Count III.

Plaintiff contends the exculpatory provision does not bar her negligence per se claim (Count III) which is based on Defendants alleged violations of various Kansas City, Missouri, Municipal Codes.  Plaintiff argues that since this claim is based on ordinances put in place to

---

[7] Even if the Court could consider these assertions, however, it would not change the outcome here.  Neither the corporate representative's deposition testimony nor Plaintiff's affidavit asserting that she did not understand the provision establish that the exculpatory provision is vague or ambiguous.

[8] Plaintiff failed to offer such proposed facts in her statement of additional uncontroverted facts.

protect the public, the claim itself involves the public interest, so an exculpation provision waiving this claim is void as against public policy since it could be used by Defendants to shield themselves from future liability for activities involving the public interest.

As Defendants point out, there are numerous problems with this argument, among them that it conflates "activities involving the public interest" (which Plaintiff does not define) with something that is void as against public policy. More importantly, Plaintiff fails to cite any caselaw supporting her theory, and the Missouri Supreme Court has held unequivocally that an exculpatory provision in a residential lease is *not* void as against public policy. *Warren v. Paragon Tech. Grp.*, 950 S.W.2d 844, 845 (Mo. 1997).

Negligence per se is merely an operation of law by which a plaintiff can establish the duty and breach elements of an ordinary negligence case without having to ask the jury to determine whether a particular act or omission constituted a breach of a duty. *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 512–13 (Mo. Ct. App. 2013). It is a presumption that one who has violated a statute has violated his duty to use due care. *Id*. at 513. In essence, negligence per se is simply a shortcut, a more efficient way of proving an ordinary negligence claim. *See id.* That being the case and given that the Missouri Supreme Court has held that exculpatory provisions in residential leases are not void against public policy, there is no reason why the exculpatory lease provision should not apply to Count III.

## II.     Plaintiff's MMPA claim (Count IV) fails because she cannot show ascertainable loss.

"The MMPA provides a private right of action to any person who sustains ascertainable loss in connection with the purchase or lease of personal, family, or household merchandise as a result of practices the MMPA declares unlawful." *Tucker v. Gen. Motors LLC*, 58 F.4th 392, 396 (8th Cir. 2023). The four elements of an MMPA claim are: (1) the plaintiff purchased or leased

merchandise from the defendant; (2) for personal, family or household purposes; and (3) the plaintiff suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA. Mo. Rev. Stat. § 407.025.1(1); *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022). The MMPA was amended in 2020 to additionally require that a plaintiff establish that she "acted as a reasonable consumer would in light of all circumstances," and the defendant's unlawful act "would cause a reasonable person to enter into the transaction that resulted in damages." Mo. Rev. Stat. § 407.025.1(2)(a)–(b).

Defendants argue Plaintiff cannot satisfy the third or fourth elements because she (1) cannot show an ascertainable loss under the MMPA, (2) cannot show any unlawful practice under the MMPA, and (3) cannot show she suffered any ascertainable loss as a *result* of any unlawful practice.

To satisfy the third element of an MMPA claim, a plaintiff must show that she suffered an ascertainable loss of money or property. *Dixon v. Molson Coors Beverage Co. USA LLC*, No. 4:24-CV-00353-BCW, 2025 WL 3769276, at *4 (W.D. Mo. Feb. 4, 2025). Missouri courts have interpreted the ascertained loss element as incorporating Missouri's long-standing 'benefit of the bargain' common law fraud remedy. *Vitello*, 50 F.4th at 693. This requires the plaintiff to establish "the difference between the value of the product as represented and the actual value of the product as received." *Id*. To prove ascertainable loss, the plaintiff must show that defendant represented the product in a way that made it appear to have more value than it actually did. *Dedloff v. Whole Foods Mkt. Grp., Inc.*, 688 F. Supp. 3d 893, 899 (E.D. Mo. 2023). This requires showing some difference between the defendant's representation and the actual product. *Id*. This difference is measured "at the time of the transaction" at issue. *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. Ct. App. 2016).

Defendants argue that Plaintiff cannot show that she did not receive the benefit of her bargain in leasing her apartment, that Defendants misrepresented the value of the leased unit, or that Plaintiff paid more for the unit as advertised than what it was worth in reality. They also argue Plaintiff has not attempted to quantify any difference in value for her leased apartment, so she fails to present a viable theory of ascertainable loss under the MMPA.

Plaintiff responds that she paid a monthly fee for pest control services and reported the presence of the wasps' nest to Defendants on two occasions, but "Defendants did not fulfill their end of the bargain and remediate the pest infestation at the mail hub." Plaintiff also argues she paid a monthly fee for common area utilities, yet Defendants provided inadequate lighting. As a result, Defendants were unjustly enriched.

For Plaintiff to establish an ascertainable loss, she must establish the actual value of what she leased at the time of the transaction. She has not done so here. While the efficacy of the pest control services Defendants supplied may be debatable, paying some unspecified monthly fee for pest control services and then being attacked by wasps does not establish an ascertainable loss under the MMPA. Thus, the MMPA claim fails. *See Stone v. J&M Secs., LLC*, No. 4:20-cv-00352-SPM, 2021 WL 4476712, at *9 (E.D. Mo. Sept. 20, 2021) ("Without a showing of ascertainable loss, Plaintiffs cannot prevail on their MMPA claim. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' MMPA claim.").

Because this argument is dispositive, the Court will not address Defendant's remaining arguments concerning the MMPA.

13

**III. Plaintiff's gross negligence claim (Count V) is a negligence claim, and Plaintiff's attempt to recharacterize it as recklessness is meritless.**

Finally, Defendants move for summary judgment on Count V, what the Complaint captions as "COUNT V – GROSS NEGLIGENCE." Compl. p. 19, ECF No. 1-1. Defendants argue that Missouri law does not recognize a cause of action for gross negligence, and a gross negligence claim is simply a negligence claim, so Count V is barred by the exculpatory provision. Plaintiff respond that "[w]hile 'gross negligence' may not be an official claim in Missouri," Count V nonetheless survives because Missouri law recognizes a claim for recklessness, and Plaintiff "has alleged and has offered evidence of Defendants' recklessness and disregard for the safety of tenants and therefore summary judgment in [sic] inappropriate as to Count V." Resp. In Opp'n at 13.

Plaintiff's argument is meritless. Missouri law here is clear: "Missouri does not recognize a cause of action for gross negligence . . ." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 497–98 (Mo. 2024), because Missouri—like most states—does not recognize degrees of negligence.[9] *Tendai v. Bd. of Reg. for Healing Arts*, 161 S.W.3d 358, 367 n.6 (Mo. 2005). So labeling Count V "gross negligence" makes no difference; it is still a negligence claim, and as such it is barred by the lease's exculpatory provision. *See DeCormier v. Harley-Davidson Motor Co. Grp., Inc.*, 446 S.W.3d 668, 671 (Mo. 2014) (observing the plaintiff could not avoid the law on exculpatory clauses "by alleging [the defendants were] grossly negligent because Missouri courts do not recognize degrees of negligence at common law.")

Plaintiff's last-ditch attempt to salvage Count V by re-characterizing it as a recklessness claim fares no better. To plead recklessness under Missouri law, a plaintiff must plead "facts which would lead a reasonable man to realize that the actor's conduct not only creates an

---

[9] While there are degrees of care, such as failure to use ordinary care or failure to use great care, which apply in different contexts, there are not degrees of negligence. *Hatch v. V.P. Fair Foundation, Inc.*, 990 S.W.2d 126, 139 (Mo. Ct. App. 1999).

unreasonable risk of . . . harm to the other but also involves a high degree of probability that substantial harm will result to [the other]." *Id*. at 672. Although Count V contains the word "reckless," it wording pleads gross negligence, i.e., negligence. It alleges that "Defendants as the owners and property managers . . . owed Plaintiff a duty of care as a tenant and invitee to keep the premises reasonably safe," and "Defendants knew that the mailbox hub was not reasonably safe and that a wasp infestation was present." Compl. ¶¶ 85, 91. Defendants were thus "grossly negligent and reckless, and showed a conscious indifference to the safety of Plaintiff," by "[f]ailing to repair or replace the concrete entryway to the mailbox hub," "failing to remove the wasp nest," etc., all of which "created an unreasonable risk of harm to tenants." *Id*. at ¶ 92. In short, Count V alleges Defendants had a duty to keep the premises "reasonably" safe, breached this duty by failing to repair a patch of concrete and remove a wasp nest, and thereby created an "unreasonable risk of harm to tenants." This alleges negligent behavior, not behavior "involving a high degree of probability that substantial harm" would result to another. Since Count V alleges negligence, it is barred by the lease's exculpatory provision.

## Conclusion

Because Defendants have demonstrated they are entitled to judgment as a matter of law, Defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date:  July 23, 2026       /s/ Greg Kays
                          GREG KAYS, JUDGE
                          UNITED STATES DISTRICT COURT